(No. 34568.—

CONCRETE CONTRACTORS' ASSOCIATION OF GREATER CHICAGO *et al.*, Appellees, *vs.* THE VILLAGE OF LA GRANGE PARK *et al.*, Appellants.

*Opinion filed May 21, 1958—Rehearing denied June 18, 1958.*

House and Klingbiel, JJ., dissenting.

Edward S. Cody, and Leonard Bosgraf, both of Chicago, for appellants.

John P. Demling, of Chicago, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

A decree of the superior court of Cook County held that certain ordinances of the villages of La Grange Park and Brookfield are invalid and enjoined their enforcement. The villages appeal. The trial judge has certified that the validity of municipal ordinances is involved and that in his opinion the public interest requires a direct appeal. Ill. Rev. Stat. 1957, chap. 110, par. 75.

The ordinances in question relate to the licensing of persons engaged in concrete construction work. The ordinance of La Grange Park provides: "No person, firm or corporation shall engage in the business of cement contractor or the construction or repair of cement work within the Village without first obtaining a license therefor." The Brookfield ordinance provides: "That no person, firm or corporation shall engage in the business commonly known as mason contracting or of constructing or repairing sidewalks in any public street or place in the Village without first having obtained a license therefor * * *." Despite the difference in the terms used to describe the licensed occupation, the parties agree that both ordinances apply to persons engaged in concrete construction work. The La Grange Park ordinance provides for a license of $25 and the Brookfield ordinance for a fee of $15.

The complaint attacking the ordinances was originally filed by the Concrete Contractors Association of Greater Chicago, a not-for-profit trade association with a membership of 300 concrete construction contractors. Subsequently five individual contractors engaged in business in the two villages and directly subject to the ordinances in question intervened as party plaintiffs. Their presence makes it unnecessary to consider the standing of the Association to maintain the action.

The case was tried upon a stipulation of facts. The work of the contractors consists of constructing concrete footings, foundations and flat work. Footings and foundations are the first component parts of a building and the concrete contractor is usually the first subcontractor at the site after the excavation is made. Floors and sidewalks are generally installed near the end of the building construction. Ninety per cent of the concrete used by the contractors is purchased by them from redi-mix concrete companies and delivered to the building site in company trucks. The purchaser of redi-mix concrete, whether a concrete contractor, builder or home owner, can, however, alter the combination of ingredients making up the redi-mix concrete. About eighty-five per cent of the business of the concrete contractors is done on subcontract. The villages require the general contractor or builder to take out all permits for new buildings, and before a permit is issued plans and specifications must be submitted to the building commissioner for approval. About fifteen per cent of the business of concrete contractors is done on direct contract with home owners for the replacement of deteriorated concrete or for the installation of new concrete work.

Both villages have enacted ordinances dealing with standards for the construction of buildings and sidewalks. The ordinances of both are substantially similar, and a description of the ordinances of Brookfield will suffice. They provide that all building materials and all debris, in street,

lawn spaces or sidewalks adjacent to buildings, shall be removed by contractors or owners, and, upon their failure to do so, upon notice by the village police, the debris shall be removed by the village. All sidewalks in the village, unless otherwise provided in any special tax or special assessment ordinance, are to be constructed of Portland cement and conform to specifications prescribed in detail and all work is to be subject to approval and acceptance by the village engineer. All private driveways are required to be constructed of concrete from sidewalk to curb, according to detailed specifications.

The building ordinances prescribe a specified standard quality for Portland cement, standards for the quality of lime, mortar for masonry, concrete aggregates, and proportions of plain concrete. They also prescribe standards for reinforced concrete. Tests of the actual construction must satisfy the building commissioner.

In 1956 the village of Brookfield (with a population of 15,472 in 1950) issued 600 building permits and licensed 95 concrete and mason contractors. In the same year, the village of La Grange Park (with a population of 6,176 in 1950) issued 277 building permits and granted licenses to 93 concrete contractors. Expenses are necessarily incurred incident to the inspection and regulation of the cement and concrete construction work. Plaintiffs have not challenged the reasonableness of the amounts of the respective license fees.

The basic contention of the plaintiffs is that the power to license persons engaged in concrete construction work has not been delegated to municipalities. There is no express grant of authority which in terms authorizes cities and villages to license concrete contractors. For their authority the villages rely upon powers derived from the following provisions in article 23 of the Revised Cities and Villages Act: "To fix the amount, terms and manner of issuing and revoking licenses" (sec. 5) ; "To vacate, lay out, establish,

open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, * * *" (sec. 8); "To regulate the use of the streets and other municipal property" (sec. 10); "To prescribe the strength and manner of constructing all buildings, structures and their accessories and of the construction of fire escapes thereon" (sec. 70); "To pass and enforce all necessary police ordinances" (sec. 105); "To pass all ordinances and make all rules and regulations, proper or necessary, to carry into effect the powers granted to municipalities, with such fines or penalties as may be deemed proper." (sec. 106). Section 1 of article 63 declares: "In addition to any other manner authorized by law, any municipality, by ordinance, may provide for the construction of sidewalks therein, along or upon any street or streets or part of streets therein." Ill. Rev. Stat. 1957, chap. 24, pars. 23—5, 23—8, 23—10, 23—70, 23—105, 23—106 and 63—1.

The fact that the villages have not been granted express power to license concrete contractors is not controlling if the General Assembly has expressly granted to the villages one or more powers, the efficient exercise of which requires that the business of the contractors be regulated. Authority for the enactment of an ordinance may be derived either from a single power or from two or more municipal powers in combination. *Father Basil's Lodge, Inc.* v. *City of Chicago,* 393 Ill. 246; *City of Bloomington* v. *Wirrick,* 381 Ill. 347; *Arms* v. *City of Chicago,* 314 Ill. 316; *Consumers Co.* v. *City of Chicago,* 313 Ill. 408; *Gundling* v. *City of Chicago,* 176 Ill. 340.

To determine whether defendant villages are impliedly authorized to license persons engaged in cement work, the licensing ordinances must be considered in conjunction with the powers which are expressly granted and are being lawfully exercised. If the licensing ordinances are reasonably necessary to effectuate the regulations prescribed by other valid ordinances dealing with the same subject matter, they

may be sustained as regulatory measures. (See: *Bauer* v. *City of Chicago*, 321 Ill. 259.) The licensing provisions thus do not stand in isolation, but must be read together with the comprehensive regulatory ordinances dealing extensively with the composition of the concrete to be used in sidewalks, driveways and buildings. Plaintiffs do not question these regulatory provisions, which were adopted under express powers granted to establish and improve streets and sidewalks, (section 23—8) to regulate the use of streets, (section 23—10) and to prescribe the strength and manner of constructing all buildings, structures and their accessories (section 23—70).

Plaintiffs, it is stipulated, not only furnish concrete but also do concrete footing, foundation and flat work. Municipalities are empowered "To prescribe the thickness, strength, and manner of constructing all buildings." That power is essential to the protection of the public safety, and it offers protection as well against construction work of poor quality of which the owner or purchaser may be unaware. The building ordinances require the village officials to test the strength of foundations by standard tests particularly described in the ordinances. From the agreed facts it is also clear that the operation of the concrete contractors and their trucks may cause damage to the streets. Building material and debris are placed by contractors on streets, lawn spaces and sidewalks. The ordinances require the removal of this material.

The sidewalk and building ordinances of the two villages, which the licensing provisions supplement, contain numerous regulatory provisions; they are essentially regulatory in nature. The power to exact a license fee to defray all or a part of the cost of the regulation or inspection is implicit in the power to regulate. *Larson* v. *City of Rockford*, 371 Ill. 441; *American Baking Co.* v. *City of Wilmington*, 370 Ill. 400; *City of Chicago* v. *R. & X. Restau-*

*rant, Inc.,* 369 Ill. 65; *City of Chicago* v. *Ben Alpert, Inc.* 368 Ill. 282; *City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597.

The plaintiffs do not contest "the right of a municipal corporation to license contractors engaged in public sidewalk construction." They have instead taken the position that this conceded power is irrelevant, because "So far as this appeal is concerned none of the plaintiffs is engaged in public sidewalk construction." The record does not support this position. The statement of the stipulated facts upon which the case was submitted for decision makes it clear that the contractors are engaged in the construction of sidewalks, and it describes how that work is done. It describes "flat work" as including the construction of floors and sidewalks, and it points out that floors and sidewalks are generally installed near the end of building construction. It refers also to the work that is done by the plaintiffs in connection with "replacement of deteriorated concrete such as floors, walks and driveways."

But the plaintiffs say that the ordinances in the cases cited and in others relied upon by the defendants were limited to the licensing of places, buildings or vehicles. Ordinances licensing occupations and persons engaged therein have frequently been sustained as implied from one or more statutory powers of regulation. *Chicago Cosmetic Co.* v. *City of Chicago,* 374 Ill. 384; *City of Chicago* v. *Ben Alpert, Inc.* 368 Ill. 282; *City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597; *City of Chicago* v. *Drogasawacz,* 256 Ill. 34; *Spiegler* v. *City of Chicago,* 216 Ill. 114.

In *City of Chicago* v. *American Tile and Gravel Roofing Co.* 282 Ill. 537, this court upheld an ordinance requiring a license of all persons carrying on the occupation of composition-roofing and using the streets for that purpose. The license fee in that case was based upon the number of wagons used on the streets by the licensee, but there is no requirement that a license fee be so determined.

No negative inference can be drawn from sections 43 and 44 of article 22 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1957, chap. 24, pars. 22—43, 22—44,) providing for the annual licensing of mason contractors. The fact that the legislature requires mason contractors to obtain licenses in municipalities with a population of 150,000 or more, based upon proficiency examinations, and provides that the license shall be valid throughout the State (par. 22—46,) does not impair the power of other cities and villages to exact a license fee to defray the costs of inspecting and regulating the business of such contractors.

The licensing ordinances are designed to make effective the regulations contained in the ordinances dealing with the construction of buildings, sidewalks and the use of streets. In our opinion they are reasonably necessary for that purpose, and are valid.

The decree of the superior court of Cook County is reversed and the cause is remanded, with directions to dismiss plaintiffs' amended complaint.

*Reversed and remanded, with directions.*

Mr. JUSTICE HOUSE, dissenting:

The majority opinion holds that the defendant villages have the implied power to enact the licensing ordinances in question because they are reasonably necessary to make effective regulations contained in other ordinances dealing with the construction of buildings and sidewalks and the use of streets.

Disregarding the license fee for the moment, there is nothing in either ordinance that tends in any way to effectuate the other ordinances, nor does either state that failure to comply with ordinances regulating the construction of buildings and sidewalks and the use of streets shall be the basis for the revocation of the license. The regulatory ordinances can be and are being enforced in the same manner that any other ordinance is enforced, and the issuance of

a license without any terms for issuance and with extremely general terms for revocation can be of no aid.

The majority opinion does not explain in what manner the licensing ordinances will effectuate other regulatory ordinances. The opinion states that the concrete contractors construct footings, foundations and flat work, that they may cause damage to the streets, and that they place building material and debris on streets, lawn spaces and sidewalks. This certainly does not show any necessity for licensing concrete contractors to effectuate the ordinances which regulate the construction of buildings and sidewalks and the use of streets.

Since it has not been shown that the licensing ordinances are reasonably necessary "to effectuate the regulations prescribed by other valid ordinances dealing with the same subject matter," the power to enact them cannot be implied. *Potson* v. *City of Chicago,* 304 Ill. 222.

The majority holds that the license fee placed on the concrete contractors is valid since the sidewalk and building ordinances are regulatory and "the power to exact a license fee to defray all or a part of the cost of the regulation or inspection is implied in the power to regulate. [Citations.]" In all the cases cited by the majority, however, the license fee is placed on subject matter which the municipality has the express or implied power to regulate. By permitting the exaction of a license fee from the concrete contractors the majority is allowing the defendant villages to regulate that occupation when there is no express or implied power to do so.

If cities and villages can license under such circumstances as these, then there is no practical limitation upon the power to tax through the guise of licensing, and the door is opened to the licensing of all forms of business for the purpose of obtaining revenue.

Mr. JUSTICE KLINGBIEL joins in this dissenting opinion.